

**Signed and Filed: February 12, 2008**

_____
**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 07-31580 TEC |
| NATIONAL FARM FINANCIAL CORPORATION, | Chapter 11 |
| Debtor. | |

**MEMORANDUM DECISION RE UNITED STATES TRUSTEE'S MOTION TO APPOINT CHAPTER 11 TRUSTEE**

On February 4, 2008, the court held a hearing on the motion of the United States Trustee for the appointment of a trustee in this chapter 11 case. Patricia A. Cutler appeared for the United States Trustee. Patrick A. Murphy and Robert A. Julian appeared for the debtor in possession. Thomas R. Kreller appeared for judgment creditor PSM Holding Corp. Upon due consideration, and for the reasons stated below, the motion is granted.

**FACTS**

Debtor in possession, National Farm Financial Corporation (Debtor), is a holding company whose only asset is 100 percent of the shares of Business Alliance Insurance Company (BAIC). The Chao

MEMORANDUM RE U.S. TRUSTEE'S MTN
TO APPOINT A CHAPTER 11 TRUSTEE        -1-

Family Trust owns 100 percent of the shares of Debtor. Julie and Larry Chao are the sole beneficiaries and co-trustees of the trust. Julie and Larry Chao are the sole members of Debtor's board of directors. Larry Chao is the president of both Debtor and BAIC.

In September 2005, Debtor entered into a contract to sell its BAIC shares to PSM Holding Corp. (PSM). When Debtor refused to perform, PSM sued Debtor, BAIC, and Larry Chao for damages in the United States District Court for the Central District of California. After a 15-day jury trial, the court entered a judgment in favor of PSM that imposed joint and several liability on all three defendants in the amount of $43 million (the Judgment). The court reduced the award to $40 million on the defendants' post-trial motion, but otherwise refused to set aside the Judgment.

Unable to post an adequate bond to stay enforcement of the Judgment pending appeal, Debtor filed a chapter 11 petition on December 5, 2007. Larry Chao filed a chapter 11 petition on January 7, 2008. BAIC is not eligible to file for bankruptcy protection because it is a domestic insurance company. § 109(b)(2).[1]

On December 5, 2007, Debtor filed an adversary proceeding against PSM seeking to enjoin PSM from enforcing the Judgment against BAIC during the pendency of this chapter 11 case. The court declined to grant a preliminary injunction, primarily on the basis that Debtor had not shown a likelihood of confirming a chapter 11 plan. The court did grant a temporary restraining order

---

[1] Unless otherwise noted, all statutory references are to the United States Bankruptcy Code, Title 11, United States Code.

through February 8, 2008, and later extended that order through February 13, 2008.

In the course of seeking a preliminary injunction, Debtor asserted that both Julie Chao and Larry Chao asserted claims against Debtor. The United States Trustee filed the current motion for appointment of a trustee on the basis that Julie and Larry Chao have a conflict of interest in asserting claims against the debtor in possession at the same time they are the sole members of the board of directors of the debtor in possession. The United States Trustee also urged that a trustee should be appointed on the basis of acrimony between Debtor and its creditors.

Judgment creditor PSM joined in the motion of the United States Trustee. In its papers, PSM urged an additional basis for the appointment of a trustee: that the jury had found that Debtor had defrauded PSM. Debtor filed a motion to strike the joinder, on the basis that it raised new issues. Debtor also asserted numerous objections to the evidence offered by PSM. There is no need to rule on the motion to strike or the evidentiary objections, as the court resolves this motion on the basis of the issues originally raised by the United States Trustee.

Following the United States Trustee's motion for appointment of a trustee, Debtor added three outside directors, appointed those new directors to a special litigation committee of the board, and authorized that committee to make all decisions related to the claims asserted by Julie and Larry Chao. Both the United States Trustee and PSM contend that appointment of the special litigation committee is not a sufficient response. The committee does not resolve the conflict of interest raised by the Chaos' assertion of

claims against Debtor, they argue, because the committee members were selected by the Chaos. The committee does not resolve the broader conflict between Debtor and PSM, they argue, because the charter of the committee is too narrow. The committee was not accorded jurisdiction over settlement of the appeal of the Judgment, the terms of a plan, and other issues on which Debtor and PSM are, or may soon be, at loggerheads.

**DISCUSSION**

Conflict between a debtor and its creditors can constitute cause for appointment of a chapter 11 trustee. In re Marvel Entertainment Group, Inc., 140 F.3d 463, 472-73 (3rd Cir. 1998); Cajun Electric Power Cooperative, Inc. v. Central Louisiana Elec. Co., Inc. (In re Cajun Power Cooperative, Inc.), 74 F.3d 599, 600 (5th Cir. 1996) (adopting on reh'g the opinion of dissent in 69 F.3d 746 (5th Cir. 1995)). There is no *per se* rule under which debtor-creditor conflict requires the appointment of a trustee. Marvel, 140 F.3d at 473; Cajun Electric, 74 F.3d at 600. Rather, the courts must be given discretion to appoint a trustee on a case-by-case basis, when the conflict extends beyond that which always exists between debtor and creditors and threatens the breakdown of reorganization efforts. Marvel, 140 F.3d at 472-73.

The circumstances of the Marvel case are like those of the present case in several respects. The creditors in that case asserted that the board of the debtor in possession sought to preserve the Perelman group's control of the debtor. Id. at 467. The debtor in possession filed suit to subordinate the claims of creditors who opposed that outcome. Id. at 468. The opposing creditors stated that they believed the board was "incapable of

**MEMORANDUM RE U.S. TRUSTEE'S MTN
TO APPOINT A CHAPTER 11 TRUSTEE** -4-

Case: 07-31580   Doc# 97   Filed: 02/12/08   Entered: 02/12/08 13:27:37   Page 4 of 14

neutrality." Id. at 469.  The court held that cause existed for appointment of a trustee on the basis of the trial court's findings that the debtor in possession and creditors took "dramatically different stances on many issues" (id. at 473), that the debtor in possession was "not entirely without blame for the breakdown of reorganization" (id.), that the debtor in possession had failed to fulfill its fiduciary duty to deal fairly with creditors in the subordination litigation (id. at 474), and that "there is no reasonable likelihood of cooperation between the parties in the near future" (id. at 473).

The present case is a two-party dispute in which the positions of Debtor and its major creditor have become polarized.  Debtor has stated quite clearly that its objective is to enable the Chao Family Trust to retain control of BAIC, the Debtor's wholly-owned subsidiary.  Judgment creditor PSM likely wants to acquire BAIC or to have the shares reduced to cash to pay PSM's $40 million Judgment.

Debtor will have great difficulty confirming a plan under which the Chaos retain control of BAIC.  PSM's Judgment represents more than 99 percent of the scheduled general unsecured claims. Because PSM's claim is based on a judgment, Debtor will not likely be able to prevent PSM from voting its claim. Fed.R. Bankr. P. 3018(a); In re Marin Town Center, LP, 142 B.R. 374, 379-80 (N.D. Cal. 1992) (allowance for voting purposes left to reasonable discretion of court).  PSM can thus block acceptance by any class in which it is placed.  § 1126(c).  Shareholders of the Debtor (the Chao Family Trust) cannot retain any property (the BAIC shares) unless PSM consents or is paid in full.  § 1129(b)(2)(B).  Debtor

**MEMORANDUM RE U.S. TRUSTEE'S MTN
TO APPOINT A CHAPTER 11 TRUSTEE**      -5-

has no assets other than the BAIC shares with which to pay the $40 million Judgment.

Debtor has exacerbated the debtor-creditor conflict by asserting several highly questionable legal positions. Recognizing that PSM's claim is sufficient to block confirmation of any plan under which the Chao Family Trust retains the BAIC shares, Debtor asserts that PSM's claim should be subordinated to Julie Chao's equity interest. If accomplished, this would enable Julie Chao to retain the BAIC shares.

Debtor contends that Julie Chao has a valid claim against Debtor for the harm done to her equity interest by the conduct of her husband that led to the Judgment. Debtor next contends that PSM's claim should be subordinated pursuant to section 510(b) to the level of common stock of Debtor. Finally, Debtor contends that PSM's claim should be subordinated to Julie Chao's claim pursuant to section 510(c), because of PSM's unfair conduct in the District Court litigation. For the reasons set forth below, these positions have little legal support.[2]

First, Debtor does not explain how *Julie Chao* would have a claim against *Debtor*. Under California law, an action for malfeasance by an officer or director belongs to the corporation and is brought against the responsible corporate official. See, e.g., Anderson v. Derrick, 220 Cal. 770, 773-74 (1934); Nelson v. Anderson, 72 Cal. App. 4th 111, 124-26 (1999). Furthermore, to the

---

[2] Debtor has had ample opportunity to be heard regarding the legal issues discussed below. Debtor discussed these issues in support of its request for a preliminary injunction, and briefed them further in a motion for reconsideration of the order denying a preliminary injunction.

**MEMORANDUM RE U.S. TRUSTEE'S MTN**
**TO APPOINT A CHAPTER 11 TRUSTEE**       -6-

extent Julie Chao suffered harm separate from that suffered by the corporation, her claim would appear to be against her husband rather than against the corporation. The claim seems to be framed the way it is, not because that is the most natural and neutral way to frame it, but because this framing offers a way for the Chaos to neutralize the effect of PSM's large claim.

Second, Debtor's assertion that PSM's claim should be subordinated to the level of common stock of Debtor pursuant to section 510(b) is not supported by a careful reading of that statute. Section 510(b) provides:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by *such security*, except that if *such security* is common stock, such claim has the same priority as common stock.

(Emphasis added). The purpose of the statute is to prevent a party that bargains for the risks and benefits of an equity position in a company from raising itself to parity with the company's creditors when the company becomes insolvent. In re Betacom of Phoenix, Inc., 240 F.3d 823, 830-31 (9th Cir. 2001).

The "such security" language in section 510(b) provides that the claim follows the security and has the same priority as the security that gave rise to the claim. Restating the statutory language to fit the facts of the present case, section 510(b) provides that a claim arising from the purchase of the common stock of Debtor's subsidiary has the same priority as the common stock of Debtor's subsidiary. Thus, the recovery on the claim is governed

**MEMORANDUM RE U.S. TRUSTEE'S MTN**
**TO APPOINT A CHAPTER 11 TRUSTEE**    -7-

by whether the subsidiary is solvent. If the subsidiary is insolvent, there is no equity in the subsidiary's shares for the claim to attach to. If the subsidiary is solvent, as in the present case, the claim is not subordinated to the extent of the equity of the subsidiary.[3]

    Debtor cites certain cases for the proposition that a claim arising from the purchase of shares of a debtor's subsidiary must be subordinated to creditors of the debtor as well as to creditors of the subsidiary. The cases relied upon do not support that broad proposition. In none of the cases did the court indicate that the subsidiary was solvent. In none of the cases did the court hold that the claim did not "follow the security," and that a claim arising from the purchase of shares of a solvent subsidiary could not be satisfied from the equity of the subsidiary remaining after claims against the subsidiary were paid.[4]

---

[3] To the extent a claim exceeds the equity of the subsidiary, the claim would be subordinated at the parent level. Under section 510(b), the claim is given the priority of the subsidiary's common stock, and shares of a subsidiary create no interest in the assets of the parent. See In re VF Brands, Inc., 275 B.R. 725, 727 (Bankr. D. Del. 2002).

[4] In VF Brands, supra n. 3, the claimant had purchased shares of a subsidiary of the debtor. The subsidiary became insolvent. Id. at 726 (no distribution to shareholders in its bankruptcy). The court held that the securities fraud claim against the parent had the same priority as the shares of the subsidiary. The claimant could not recover from the parent, because shareholders of a subsidiary have no interest in the assets of a parent corporation. Id. at 727. Nothing in the decision suggests that the claimant would have been affected by section 510(b) in seeking recovery from the subsidiary, had that company been solvent and its shares valuable. In Lernout & Hauspie Speech Products, N.V. v. Baker, 264 B.R. 336 (Bankr. D. Del. 2001), the claimant purchased shares of the parent corporation and asserted a claim against the subsidiary. Nothing in the decision suggests that the claimant would have been affected by section 510(b) in asserting a claim against the value of the parent stock if those shares had been

**MEMORANDUM RE U.S. TRUSTEE'S MTN**
**TO APPOINT A CHAPTER 11 TRUSTEE**    -8-

Debtor's reliance on law review articles is also misplaced. Professors Slain and Kripke urge only the general policy that claims related to the purchase of shares be classified with equity in the application of the absolute priority rule. John J. Slain & Homer Kripke, The Interface Between Securities Regulation and Bankruptcy, 48 N.Y.U. L. Rev. 261 (1973). This approach permits claims arising from the sale of shares of a debtor's subsidiary to be paid from any equity of the subsidiary remaining after creditors of the subsidiary are paid. Id. at 296. Professor Georgakopoulos urges courts to reject the interpretation urged by Debtor. He argues that claims related to the shares of a debtor's subsidiary should be subordinated only to the creditors of that subsidiary, and may be paid from the equity of the subsidiary. Nicholas L. Georgakopoulos, Strange Subordinations: Correcting Bankruptcy's § 510(b), 16 Bankr. Dev. J. 91 (1999).

> The subordination of fraud claims seeks to return the priority of sellers of common stock to buyers of common stock, in part because they accept the risks inherent in common stock. The buyers of the subsidiary's stock, however, do not accept any of the risks associated with holding stock of its parent.

Id. at 109.

---

valuable. Indeed, the debtor in that case argued that the claim "follow[ed] the security" and had the same priority as the shares purchased. Id. at 341. In re THC Financial Corp., 679 F.2d 784 (9th Cir. 1982) is another case in which the claimant purchased shares of the parent company and asserted a claim against its subsidiary. The court held that the claim had to be subordinated to the creditors of the subsidiary. Nothing in the decision suggests that claimant could not have "followed the security" had the shares of the parent had value. In re Wisconsin Barge Line, Inc., 76 B.R. 142 (Bankr. E.D. Mo. 1987) involved the purchase of shares of a subsidiary, but did not discuss whether the subsidiary was solvent and does not suggest that claimant would have been denied the value of the shares had the subsidiary been solvent.

**MEMORANDUM RE U.S. TRUSTEE'S MTN**
**TO APPOINT A CHAPTER 11 TRUSTEE** -9-

> When this general principle is applied to fraud claims arising from the purchase of common stock of subsidiaries, the reference that these claims must be subordinated to the level of common stock means not common stock of the parent, but common stock of the subsidiary . . . common stock claims of the subsidiary are senior to all claims of parent creditors. . . .

Id. at 121.

Third, Debtor's assertion that PSM's claim should be subordinated to Julie Chao's equity interest pursuant to section 510(c) lacks any colorable basis. Debtor argues that the corporation could not sell all its assets without a shareholder vote,[5] that no shareholder vote was taken, and that PSM acted improperly by not making Julie Chao a party to the District Court action and by obtaining a judgment for breach of contract in these circumstances. Debtor acknowledges that the District Court addressed whether Larry Chao's actions were sufficient to bind Debtor. E.g., Memorandum of Law in Support of Debtor's Motion to Extend Automatic Stay, Adv. Proc. 07-3134, Docket No. 2, at 5. Debtor cites no precedent in which conduct like that alleged here has been the basis of equitable subordination. This is not surprising. In substance, Debtor argues that equity requires that the Judgment against Debtor for breach of a contract be subordinated to the interests of Debtor's shareholders, on the basis that the Judgment creditor failed to join a person who was not a party to the contract sued upon. Equity does not require such a bizarre reversal of position.

A debtor in possession assumes the same fiduciary duties as a chapter 7 or chapter 11 trustee. 7 Collier on Bankruptcy (15th

---
[5] Cal. Corp. Code § 1001(a).

**MEMORANDUM RE U.S. TRUSTEE'S MTN
TO APPOINT A CHAPTER 11 TRUSTEE**     -10-

ed., rev'd) § 1108.09(2). Among these obligations is the duty to be impartial. Id. at § 1108.09(4). The managers of a chapter 11 debtor must consider the interests of creditors as well as stockholders. Id. at § 1108.09(4)(c). Thus, for example, a debtor may not refuse a reasonable settlement offer on the basis that it provides only enough to pay creditors. By taking the risk of going to trial solely to obtain a recovery for equity, the debtor in possession breaches its duty to deal impartially with the interests of creditors and stockholders. In re Bowman, 181 B.R. 836, 843-45 (Bankr.D. Md. 1995).

The duty to deal impartially with all parties applies to the expenditure of estate funds on litigation. A debtor in possession may "object to the allowance of any claim that is improper." §§ 704(a)(5), 1106(a)(1). Both the duty to preserve estate assets and the duty of impartiality require that the debtor in possession not expend estate funds on unfounded objections to claims for the purpose of aiding shareholders. In the same vein, the debtor in possession should not expend estate funds on any other litigation against a creditor that does not represent an impartial evaluation of the competing legal interests of that creditor and other interested parties.

I do not at this time rule finally on the merits of the positions Debtor has asserted, or find that every aspect of those positions is wholly without merit. I do find that Debtor, perhaps affected by the natural polarity of a two-party case, has not impartially weighed the competing claims of the Chaos and PSM, but has instead asserted the most aggressive positions possible in favor of the Chaos and against PSM.

I find by clear and convincing evidence that cause exits for the appointment of a chapter 11 trustee, because of the nature and source of the conflict that has arisen between Debtor and its major creditor.[6] Marvel, supra, 140 F.3d 473-74. In so finding, I make the following subsidiary findings of fact. First, the positions of Debtor and PSM have become highly polarized. This conflict is not of such long duration as that in Marvel and Cajun Electric, but it is likely to persist. Debtor and PSM have clearly defined and starkly conflicting objectives in this chapter 11 case. Second, Debtor's actions to date indicate that it is not likely to weigh impartially all reasonable possibilities for resolving the case. Debtor has taken unfounded positions with the objective of preserving the Chaos' control over BAIC. In so doing, Debtor has not impartially weighed the interests of creditors as well as shareholders. The interest of the estate is to maximize the value of its assets, not to ensure a particular disposition of those assets.[7] Third, only a truly independent trustee appointed by the

---

[6] It is not clear whether the clear-and-convincing-evidence standard is good law. The Supreme Court held in 1991 that the preponderance-of-the-evidence standard should generally be used in bankruptcy proceedings. Grogan v. Garner, 498 U.S. 279 (1991). The clear-and-convincing-evidence standard for appointment of a trustee urged by Debtor appears in cases decided before Grogan. See In re Sharon Steel Corp., 871 F.2d 1217, 1226 (3rd Cir. 1989). The court need not decide this question, because the evidence presented by the U.S. Trustee satisfies both standards.

[7] The Chaos are, of course, free to take any position and file any action or motion in support of their interests that does not violate Fed. R. Bankr. P. 9011. As a debtor in possession, however, Debtor must act impartially as a trustee, and is not free to use the assets of the estate to pursue the goals of the Chaos alone, but must act in the interest of the estate as a whole and weigh impartially the interests of PSM along with those of the Chaos.

**MEMORANDUM RE U.S. TRUSTEE'S MTN**
**TO APPOINT A CHAPTER 11 TRUSTEE** -12-

United States Trustee will reliably perform the fiduciary duty to maximize the value of the estate and to consider all possible options for a consensual resolution of the case.[8]

**\*\*END OF MEMORANDUM\*\***

---

[8] It does not appear that either the Chaos or PSM will be able to elect a trustee because their claims are insider claims or are disputed. §§ 702(a), 1104(b)(1).

**MEMORANDUM RE U.S. TRUSTEE'S MTN**
**TO APPOINT A CHAPTER 11 TRUSTEE** -13-

**Court Service List**

Patricia A. Cutler, Esq.
Office of United States Trustee
235 Pine St., Ste. 700
San Francisco, CA 94104

Patrick A. Murphy, Esq.
Robert A. Julia, Esq.
Law Offices of Winston and Strawn LLP
101 California Street, 39th Floor
San Francisco, CA 94111

Thomas R. Kreller, Esq.
Milbank, Tweed, Hadley & McCloy
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017